**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Jennifer Lavoie

    v.                               Case No. 17-cv-49-PB
                                           Opinion No. 2018 DNH 035
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


**MEMORANDUM AND ORDER**


Jennifer Lavoie challenges the denial of her claim for
social security disability insurance (SSDI) benefits and
supplemental security income (SSI) under Title II of the Social
Security Act, 42 U.S.C. § 423.  She argues that the
administrative law judge (ALJ) erred by not finding that she had
severe mental impairments at step two, by determining that her
residual functional capacity (RFC) was greater than the evidence
showed, and by finding that she could still perform some work at
step five.  The Acting Commissioner moves for an order affirming
the decision.  For the following reasons, I affirm.


**I.    BACKGROUND**

**A.   Facts**

In accordance with Local Rule 9.1, the parties have

submitted a joint statement of stipulated facts. Doc. No. 21.
Because that joint statement is part of the court's record, I
only briefly discuss the facts here. I discuss further facts
relevant to the disposition of this matter as necessary below.

Lavoie was a 37 year-old woman at the time of her alleged
onset date. Id. at 2. She had worked as "an automobile
mechanic, heavy equipment operator, truck driver, volunteer
firefighter, environmental driller, office helper, and hardware
store clerk," prior to her application for benefits. Id.

Lavoie's first documented health problem was back pain,
which she first reported in April, 2009. Id. In April, 2011,
Lavoie underwent a magnetic resonance imaging (MRI) procedure,
which showed abnormalities in her spinal column, including a
bulging disk. Id. at 3. Lavoie complained of back and leg pain
to multiple doctors from 2009 to 2011. Id. Despite her
significant back, leg, and ankle pain, Lavoie could walk
normally, move from the seated to standing position, perform a
single leg squat, and touch her toes. Id. at 4. Lavoie is also
morbidly obese. Administrative Transcript ("Tr.") 493-494.

Lavoie received treatment for her back pain on various
occasions. Doc. No. 21 at 5. She received steroid injections
in August and September 2011, but these did not relieve her

2

pain. Id. at 5. She was also prescribed various pain
medications, including Vicodin. Id. at 7. In 2013, Lavoie
underwent back surgery to fuse two of her vertebrae. Id. at 29.
About six months after surgery, during a follow-up visit, she
stated that her back pain was a zero out of 100. Id. at 30.
She later complained of continued back pain even after surgery.
Id. at 30-31. She has continued to complain of back pain
through 2016. Id. at 36.

Lavoie also claimed to have been anxious and depressed, at
least partially due to her physical pain. Id. at 4. She was
evaluated by psychologist Edouard Carignan, to whom she
complained of "depression, irritability, and stress." Carrigan
nevertheless noted that Lavoie was not suicidal, had average
intelligence, and did not have any deficit in attention or
concentration. Id. at 9. Carignan opined that she had an
"adjustment disorder with depressed mood." Id. at 10. Doctor
Stephen Moran also evaluated Lavoie, and diagnosed her with
major depressive disorder. Id. at 16. In June, 2012, Lavoie
was hospitalized with suicidal thoughts, but had not attempted
suicide. Id. at 10. Lavoie also reports that she has post-
traumatic stress disorder (PTSD), brought on when, as a
volunteer firefighter, she responded to a car crash and

discovered that the deceased victim was her best friend. Id. at 14.

**B.** **Procedural history**

Lavoie filed claims for both SSDI and SSI on March 6, 2012, alleging that she has been disabled since August 22, 2009. Tr. 139, 141. Later, she amended her alleged disability date to October 29, 2011. Doc. No. 21 at 1. Her claims progressed to a hearing before the ALJ, who denied them in a written decision issued on June 6, 2013. Tr. 23. Lavoie appealed the denial of her claims to the district court. Lavoie v. Colvin ("Lavoie I"), 2015 DNH 236.

I reviewed her claims and reversed and remanded because the ALJ ignored the opinion of Dr. Francis Milligan, a treating source, without "specifically address[ing his] various conclusions, cit[ing] contradictory medical opinions or evidence, or otherwise explain[ing] why [his] findings were unsupported by the record. Lavoie I, 2015 DNH 236, *4; see Jenness v. Colvin, 2015 DNH 167, *7.

The same ALJ who evaluated Lavoie's claims in 2013 conducted another hearing on August 30, 2016. Tr. 483. The ALJ denied Lavoie's claims in a written decision issued on November 28, 2016. Tr. 499. In the decision, the ALJ applied the five-

step analysis required by 20 C.F.R. § 404.1520 (for SSDI claims) and 20 C.F.R. § 416.920 (for SSI claims). At step one, the ALJ determined that Lavoie had not engaged in substantial gainful activity since her alleged onset date. Tr. 486. At step two, the ALJ determined that Lavoie had the following severe impairments: "degenerative disc disease (lumbar spine, status post L5-S1 fusion) and obesity." Tr. 486. At step three, the ALJ determined that Lavoie did not have any of the impairments listed in 20 C.F.R., Subpart P, Appendix 1, which would render her disabled per se. Tr. 489. At step four, the ALJ determined that Lavoie's RFC allowed her to do "light work as defined in [§] 404.1567(b) and [§] 416.967(b)." Tr. 490. The ALJ further limited her RFC by specifying that she could "occasionally crouch, stoop, and climb ladders, ropes, and scaffolds; frequently balance, kneel, climb ramps and stairs; but must avoid all crawling." Tr. 490.

The ALJ determined that, in light of this RFC, Lavoie could not return to any past relevant work. Tr. 497. At step five, after considering the opinion of a vocational expert, the ALJ determined that Lavoie could work in a number of other jobs that existed in the national economy, including, "assembler of plastic hospital products," "deli cutter/slicer," and "toll

collector." Tr. 498. The ALJ found that Lavoie was not disabled and denied her claims for both SSDI and SSI. Tr. 499.

Lavoie did not seek review of the ALJ's decision before the Appeals Council, and the Appeals Council did not review the decision on its own. Doc. No. 21 at 2. Instead, Lavoie filed a complaint for judicial review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) on February 8, 2017. Doc. No. 1.

## II. <u>STANDARD OF REVIEW</u>

I am authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)

(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. If, however, the ALJ "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts," her findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ determines issues of credibility and draws inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. The ALJ, and not the court, must resolve conflicts in the evidence. Id.

## III. ANALYSIS

Lavoie moves to reverse the decision of the ALJ because the ALJ erroneously found that she did not have severe mental impairments at step two, determined that her residual functional capacity (RFC) was greater than the evidence showed, and incorrectly found that she could still perform some work at step five.

### A. Severe Impairments (Step Two)

Lavoie argues that the ALJ failed at step two by not

recognizing that her anxiety and depression were severe mental impairments.  She argues that the ALJ arrived at this erroneous conclusion by applying the incorrect legal standard for "severe mental impairment," improperly considering her failure to seek treatment for her mental impairments without also considering whether she could afford the treatment, failing to properly consider Dr. Moran's opinion that she had anxiety and depression, and improperly considering the fact that she had not noted these mental impairments when she initially applied for benefits.  I decline to reverse the ALJ's decision on this basis because I determine that the ALJ did not commit the above-mentioned errors, substantial evidence supports a finding that Lavoie did not have any severe mental impairments, and even if substantial evidence did support a finding of severe mental impairments, a failure to include these at step two is not reversible error.

   1.  <u>Specific Claims of Step Two Error</u>

   Lavoie claims that the ALJ erred at step two by applying the incorrect standard for determining whether an impairment is "severe."  For a mental impairment to be "non-severe," it must not prevent the claimant from participating in substantial gainful activity, even if the claimant "were of advanced age,

had minimal education, and a limited work experience." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1125 (1st Cir. 1986).  In other words, for an impairment to be non-severe, it must have "no more than a minimal effect on an individual's ability to work."  Id. at 1124.

Here, the ALJ stated, "I find that the claimant's medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and are therefore nonsevere."  Tr. 486.  Because the ALJ found that Lavoie's anxiety and depression had "no more than [a] minimal limitation" on her ability to work, he applied the correct standard.  Tr. 487.

Lavoie also argues that the ALJ erred by justifying his finding that her mental impairments were non-severe by noting that she did not receive medical treatment for them, without considering whether she could afford treatment.  Social Security Ruling 16-3P allows the ALJ to rely on the fact that a claimant did not seek treatment for a particular impairment as evidence that the impairment was not severe, as long as the ALJ considered that other factors, such as the ability to pay, could have been the reason why the claimant did not seek treatment.

See SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016).

Here, the ALJ did consider whether Lavoie could afford treatment for her anxiety or depression. Tr. 487. See SSR 16-3P, 2016 WL 1119029, at *9 (March 16, 2016). He nonetheless found that her inability to pay did not fully account for her minimal treatment history. Tr. 487. Therefore, he permissibly cited her lack of treatment as evidence of a lack of severe impairments of depression and anxiety. Id.

Lavoie also claims that the ALJ erred by rejecting Dr. Moran's opinion because the ALJ had given it "great weight" in his 2012 decision and because it was a medical opinion. Doc. 13 at 4. There is no requirement that an ALJ must accord a source the same weight when evaluating that source for a second time, on remand. "The responsibility of weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." Seavy v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). Even when I remand a case to the ALJ, it is rarely appropriate for me to dictate how to weigh the evidence, and I did not do so here. Lavoie I, 2015 DNH 236. Here, the ALJ remained free to give the evidence the weight he deemed appropriate, as long as that weight was supported by substantial evidence. See id.

Moreover, while it is true that the "ALJ must evaluate all medical opinions from all sources," the ALJ did so in this case. See Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000 at *4 (1st Cir. 1994). The ALJ considered the opinion of Doctor Stephen Moran by citing the "treatment notes at Riverbend counseling," where Dr. Moran worked. Tr. 486. The ALJ cited to the treatment notes from Dr. Moran and social worker Hannah Chassie, exhibit 15F, several times throughout his step-two determination. Tr. 487-488. Far from rejecting Dr. Moran's opinion with no justification, the ALJ evaluated, and credited, much of what he said about Lavoie's mental state, but did not adopt his ultimate conclusion.

Lavoie further argues that the ALJ's statement that her depression and anxiety were non-severe because she "did not even allege mental health limitations in her Disability Report" in 2012 was error because her mental disabilities did not arise until 2012. An ALJ can discount a claim of disability that arises after a claimant's alleged onset date. See Mills v. Astrue, 2011 DNH 097, *7. Therefore, the ALJ properly discounted her claims of depression and anxiety because she failed to make them before her alleged onset date of April 11, 2011.

The ALJ's determination that Lavoie's anxiety and depression caused no "more than minimal limitation" is supported by substantial evidence. Lavoie "was able to work full-time jobs without significant functional limitations" despite claiming to have had "depression and anxiety for many years." Tr. 487. She testified that "work helped her mental health state." Tr. 487. She maintained a social schedule, Tr. 487, and has remained able to complete the "activities of daily living." Tr. 489. See Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991). Additionally, Dr. Laura Landerman evaluated Lavoie's medical records and opined that Lavoie did not have any severe mental impairments. Tr. 57, 67, 489.

### 2. Step Two Reversible Error

At step two, the ALJ is required to determine whether a claimant has a severe impairment or combination of severe impairments. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Step two is a threshold inquiry, meant only to weed out unsubstantiated claims. See Hines v. Astrue, 2012 DNH 121, *9 (2012) ("The determination at step two as to whether an impairment is severe is a *de minimis* test, designed to 'screen out groundless claims.'" (quoting McDonald v. Sec'y of Health &

12

Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986))).  Step two is not where the ALJ makes determinations about what, specifically, the claimant is capable of doing at work.  See id. The full analysis of the claimant's limitations occurs later in the analysis, when the ALJ formulates the RFC.  Therefore, the ALJ only commits reversible error at step two if he finds the claimant has no severe impairments, but there is substantial evidence in the record of at least one severe impairment.  See Hines, 2012 DNH 121, *9.

Here, at step two, the ALJ found that Lavoie had two "severe impairments" -- "degenerative disc disease . . . and obesity," but not anxiety or depression -- and moved on to step three.  Tr. 486.  Because the ALJ found that there was at least one severe impairment and proceeded to step three, he did not commit reversible error in his step two analysis.  See Hines, 2012 DNH 121, *9.

**B.    Residual Functional Capacity**

Lavoie argues that the ALJ's RFC finding was not supported by substantial evidence because it improperly discredited her subjective pain complaints and improperly ignored the opinion of her treating physician, Dr. Milligan.

1.    Subjective Pain Complaints

Pain is not a disability in and of itself, but, rather, a symptom of a disability. 20 C.F.R. § 404.1529(a); Anderson v. Astrue, 682 F.Supp.2d 89, 97 (1st Cir. 2010). "The regulations . . . plainly require that the claimant demonstrate a medically determinable ailment that would give rise to symptoms [of pain] in order to obtain benefits." Anderson, 682 F.Supp.2d at 97. Social Security Regulation 16-3P makes clear that the ALJ cannot rely on a claimant's pain complaints to support a finding that the claimant is disabled, unless that pain is caused by a "medically determinable impairment," shown by either "medical signs" or "laboratory findings." SSR 16-3P, 2016 WL 1119029, at *3; see Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Substantial evidence supports the ALJ's determination that Lavoie's back pain was not as significant as she claimed because objectively verifiable medical evidence supported a finding of only moderate pain, because Lavoie was able to participate in daily activities despite her pain, because Lavoie's levels of self-reported pain were inconsistent, and because Lavoie did not receive medical treatment for her pain. Tr. 490-495. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986) ("[A]s a primary requirement, there must be a clinically

determinable medical impairment that can reasonably be expected to produce the pain alleged."); Cookson v. Colvin, 111 F.Supp.3d 142, 154 (D. R.I. 2015) (other factors that an ALJ can use to evaluate subjective pain complaints include "claimant's daily activities" and "treatment . . . received for relief of pain").

    2.  <u>Opinion of Treating Physician Dr. Milligan</u>

The ALJ is required to give particular attention to medical evidence from a "treating source." 20 C.F.R. § 404.1527(c)(2).[1] A "treating source" is the claimant's "own acceptable medical source who provides [the claimant] . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship with [the claimant] . . . ." Benton v. Barnhart, 331 F.2d 1030, 1035 (9th Cir. 2003); 20 C.F.R. § 404.1527(a)(2).

An ALJ must give the "treating source's" opinion "controlling weight" if that opinion is well-supported and consistent with substantial evidence. Foley v. Astrue, 2010 WL 2507773 (D. Mass. June 17, 2010); 20 C.F.R. § 404.1527(c)(2). Even if the treating source's opinion does not satisfy the requirements to be considered "controlling evidence," it should still be given some "deference." Douglas v. Colvin, 2016 DNH

---

[1] This is a consideration mandated by 20 C.F.R. § 404.1527, which governs all claims filed before March 27, 2017, a time period that includes this claim.

176, *6.

If the ALJ rejects the opinion of a treating source, the ALJ must give "good reasons" for his determination, which must be "both specific and supportable." Jenness, 2015 DNH 167, *6. As long as the ALJ gives good reasons for resolving inconsistencies between a treating source and other evidence in favor of the other evidence, I will uphold the decision of the ALJ. Costa v. Astrue, 565 F.Supp.2d 265, 271 (D. Mass. 2008).

As set out in my previous decision on Lavoie's application for SSI and SSDI, Dr. Francis Milligan was her "treating source." Lavoie I, 2015 DNH 236, *2. In his opinion after remand, the ALJ did not err because he gave specific, supportable reasons for rejecting Dr. Milligan's opinion. Tr. 495-497. First, the ALJ gave Dr. Milligan's opinion "little weight" because he is a general practice physician, not a specialist. Tr. 496. 20 C.F.R. § 404.1527(c)(5), 20 C.F.R. § 416.927(c)(5) (an ALJ should give more weight to a specialist than general practice physician). Second, the ALJ noted that much of Dr. Milligan's opinion that Lavoie had debilitating back pain was based on examinations that took place before her surgery, which vastly improved her condition. Tr. 496. See Blackette v. Colvin, 52 F.Supp.3d 101, 115 (D. Mass. 2014) ("If

there is an indication in more recent records that there has been a significant change in the claimant's condition, older medical reports now inconsistent with that evidence may not be used to support an RFC determination." (internal citations omitted)). Third, the ALJ noted that much of Dr. Milligan's opinion is based not on his own examinations, but on the examinations done by physical therapist Christopher Herd. Tr. 496. This physical therapist is not a medical source, and so his opinion is not entitled to the same level of deference that Dr. Milligan's would be. See 20 C.F.R. § 404.1527. Moreover, Herd's own evaluations are entitled to little deference because he evaluated Lavoie only one time and mostly relied on her self-reported pain levels. Tr. 496-497. See 20 C.F.R. § 404.1527. Lavoie's subjective pain reports, upon which Herd and Dr. Milligan relied, are contradicted by the objective physical evidence (including evaluations of her strength and reflexes during in-person exams). Tr. 496. See Anderson, 682 F.Supp.2d at 97. Fourth, the ALJ noted that Dr. Milligan's opinion is internally inconsistent, as he stated that she can lift up to ten pounds and sit for two hours per day, but denied that she can even work for one hour per day. Tr. 496. See Arruda v. Barnhart, 314 F.Supp.2d 52, 72 (D. Mass. 2004) ("The relevant

regulations . . . permit the ALJ to downplay the weight afforded
a treating physician's assessment . . . where . . . it is
internally inconsistent or inconsistent with other evidence in
the record including treatment notes and evaluations by
examining and non-examining physicians.").

## C.    <u>Vocational Expert Opinion (Step Five)</u>

Lavoie argues that the ALJ erred by relying upon the
vocational expert's testimony because it was based on a
hypothetical that did not include all of Lavoie's relevant
severe impairments.  Lavoie also argues that the vocational
expert's opinion was invalid because the vocational expert did
not explicitly state that his opinion was consistent with the
directory of occupational titles (DOT).

An ALJ can rely on the opinion of a vocational expert to
determine whether a claimant is disabled only if the vocational
expert's opinion is based on a hypothetical question that
"accurately portray[s] the claimant's physical and mental
impairments.  Ealy v. Comm'r of Social Sec., 594 F.3d 504, 417
(6th Cir. 2010); Rose v. Shalala, 34 F.3d 13, 19 (1st Cir.
1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374,
375 (1st Cir. 1982) ("[I]n order for a vocational expert's
answer to a hypothetical question to be relevant, the inputs

into that hypothetical must correspond to the conclusions that are supported by the outputs from the medical authorities.").

At step two, Lavoie claimed that she had two "severe mental impairments": anxiety and depression. The ALJ examined the evidence of Lavoie's anxiety and depression, and determined that these mental limitations were "non-severe." Tr. 487. Nevertheless, the ALJ concluded that Lavoie's depression and anxiety were "mild limitations" on her ability to work, and stated, "I considered these impairments upon assessing her [RFC], and the [RFC] includes a limitation to simple, unskilled work." Tr. 487.

The ALJ's statement that Lavoie's RFC is limited to "simple, unskilled work" is supported by substantial evidence. Psychologist Edouard Carignan, who personally examined Lavoie and whose opinion the ALJ gave "great weight," stated that Lavoie had minimal difficulty in activities of daily living and diagnosed her with some depression and anxiety symptoms. Tr. 488. Dr. Laura Landerman, whose opinion the ALJ also credited, stated that Lavoie had "mild limitations in activities of daily living, social functioning, and maintaining concentration[,] persistence[,] and pace . . ." Tr. 488. Moreover, Lavoie's own testimony about her difficulties working, carrying out the

activities of daily life, and maintaining a normal social
schedule all support a finding of some limitation on her mental
capacity.  Tr. 488-489.  These "minimal" and "mild" mental
limitations support a finding that Lavoie was capable of
performing unskilled work.  See Ortiz v. Sec'y of Health & Human
Servs., 890 F.2d 520, 526 (1st Cir. 1989).

        Despite the ALJ's statement at step two that Lavoie could
only engage in "simple, unskilled work," the ALJ omitted that
limitation from Lavoie's RFC and from the hypothetical question
posed to the vocational expert at step five.  Tr. 490 (the RFC
limited Lavoie to "light work," with further limits on
crouching, stooping, climbing, balancing, kneeling, and
crawling, but no limit to simple, unskilled work); Tr. 509, 547
(the ALJ asked the vocational expert whether a claimant "of
similar age, education, and vocational background[;] who is
limited to light work[;] . . . can occasionally climb ladders,
frequently climb stairs and ramps[;] sit, stand, or walk for six
hours of an eight-hour workday, six hours each[;] frequently
balance and kneel[;] occasionally crouch or stoop[; and] who
should avoid all crawling" can perform any jobs in the national
economy; notably omitting any reference to simple, unskilled
work).  Thus, the ALJ determined that the claimant had a

relevant limitation (to simple, unskilled work), that limitation was supported by substantial evidence, but the limitation was not included in the hypothetical question presented to the vocational expert.

This failure to include a relevant limitation in the hypothetical question put to the vocational expert would usually require me to reverse the ALJ's finding that the claimant was not disabled. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities"). The Acting Commissioner, however, argues the error was harmless because the vocational expert's opinion would have been no different if the limitation to "simple, unskilled work" had been included in the hypothetical.

If an ALJ errs by posing an incomplete hypothetical question to the vocational expert, the error is harmless if the vocational expert's opinion would have been the same even with the omitted impairment. See Dorman v. Astrue, No. 12-50023-TSH, 2013 WL 4238315, *6 (D. Mass. May 21, 2013) (ALJ's omission of a mental limitation from claimant's RFC was harmless error because

the vocational expert's opinion would not have changed even if
the RFC had included the limitation); see also Bickford v.
Barnhart, 242 F.Supp.2d 39, 42 (D. Me. 2002) (failure to include
a relevant limitation in the hypothetical question put to the
vocational expert did not require reversal where omission was
harmless).

Here, the vocational expert testified that an individual
limited to "light work" with additional limitations on
crouching, stooping, climbing, balancing, kneeling, and
crawling, but not with a limitation to "simple, unskilled work,"
could work as an "assembler of plastic hospital products,"
"delicatessen cutter/slicer," and "toll collector." Tr. 498.
The Dictionary of Occupational Titles (DOT) classifies each of
these jobs as requiring "level two reasoning." A job which
requires "level two reasoning" under the DOT requires a claimant
who is capable of "simple and routine work." Auger v. Astrue,
792 F.Supp.2d 92, 96 (D. Mass. 2011) (citing Hackett v.
Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)). The vocational
expert's testimony that the hypothetical claimant can perform
jobs that require level two reasoning is equivalent to testimony
that the hypothetical claimant can perform jobs that require
simple, unskilled work. As a result, even if the ALJ had

included the limitation to "simple, unskilled work" in the
hypothetical question put to the vocational expert, the
vocational expert would have listed the same jobs in response.
Therefore, the failure to include this limitation in the
hypothetical question was harmless error.

Lavoie also claims that the hypothetical was incomplete
because the ALJ did not ask the vocational expert whether his
opinion was consistent with the DOT. Doc. No. 13 at 35. While
the ALJ did not ask the vocational expert whether his testimony
conflicted with the DOT, the ALJ did ask the vocational expert
whether he understood that "if [he] gave an opinion which
conflicts with the information in the Dictionary of Occupational
Titles, [he] need[ed] to advise [the ALJ] of the conflict . . ."
Tr. 546. The ALJ answered that he did understand, and did not
subsequently inform the ALJ of any conflicts between his opinion
and the DOT. This question satisfied the requirements of Social
Security Ruling 00-4P. See SSR 00-4P, 2000 WL 1898704 (Dec. 4,
2000).

## IV. CONCLUSION

For the aforementioned reasons, I grant the Acting
Commissioner's motion to affirm (Doc. 18) and deny Lavoie's

motion to reverse (Doc. 13).  The clerk is directed to enter

judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


February 16, 2018

cc:   Raymond J. Kelly, Esq.
      Robert J. Rabuck, Esq.